**F I L E D**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENID CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL WAYNE THOMAS,

    Defendant-Appellant.

No. 04-6321

(D.C. No. CR-04-82-R)
(W. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, LUCERO,** and **MURPHY**, Circuit Judges.

Defendant Michael Wayne Thomas pled guilty to two counts of transporting a minor across state lines with the intent to engage in criminal sexual activity and one count of interstate travel in aid of unlawful activity, and was sentenced to a term of imprisonment of 210 months. On appeal, Thomas contends the district court violated his Sixth Amendment rights by enhancing his sentence based upon the district court's own finding that Thomas was an "organizer or leader" within the meaning of U.S.S.G. § 3B1.1(a). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

On May 5, 2004, Thomas was indicted on fifteen criminal counts arising out of his involvement with interstate prostitution. Thomas subsequently pled guilty to two counts of transporting a minor across states lines with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and one count of interstate travel in aid of unlawful activity, in violation of 18 U.S.C. § 1952(a)(3). A presentence investigation report (PSR) was prepared which recommended that Thomas receive a four-level enhancement to his base offense level pursuant to U.S.S.G. § 3C1.1 "because [he] was the leader and organizer of a criminal activity that involved five or more participants or was otherwise extensive." ROA, Vol. 3, PSR at 10. Thomas objected to this proposed enhancement, as did the government (noting that the girls who worked as prostitutes were considered under the Guidelines to be "victims" rather than "participants"). Id. at 33. In response to these objections, the probation officer stated she had "counted" five "participants," including Thomas, two fellow pimps (ExSavior Phillips and Derrick White), and two adult female prostitutes who worked for Thomas. Id.

At the sentencing hearing, the government presented a single witness, FBI special agent Michael Beaver, who testified about his investigation of Thomas. In particular, Beaver gave specific details about four juvenile prostitutes and two adult prostitutes who worked for Thomas, and opined that approximately twenty-five to thirty females had worked as prostitutes for Thomas over the course of his career as a pimp. Beaver also testified that Thomas had transported juveniles to Dallas and Denver to perform acts of

2

prostitution, and had also promoted prostitution in Harrisburg, Pennsylvania, as well as possibly New York, New York. Lastly, Beaver testified he had spoken with "[w]ell over a hundred" prostitutes in the Oklahoma City, ROA, Vol. 1, at 33, all of whom identified Thomas as "the dominant or No. 1 pimp" in the Oklahoma City area. Id. at 32. At the conclusion of Beaver's testimony, the district court rejected the probation officer's assertion that the criminal activity involved five or more participants. In doing so, the district court noted that victims were not included as "participants" for purposes of U.S.S.G. § 3B1.1. Id. at 60. Further, the district court found that Thomas sometimes "worked together" with Phillips and White, the other two pimps, but was not "an organizer or leader of Phillips and White." Id. at 61. The district court proceeded, however, to agree with the government that, for purposes of § 3B1.1, Thomas was an organizer or leader of a criminal activity that was "otherwise extensive . . . ." Id. at 63. In reaching this conclusion, the district court noted that Thomas "obviously worked numerous girls," "obviously went to a variety of states: Texas, Colorado, Pennsylvania, and perhaps New York," and "[w]as obtaining girls out of Kansas." Id. at 62. In short, the district court found that "[i]t was obviously a loose-knit, but somewhat, I guess, sophisticated network of getting – working a girl for awhile and then getting other girls." Id. at 62-63. Based upon these findings, the district court imposed a four-level enhancement pursuant to § 3B1.1(a). Ultimately, the district court sentenced Thomas to a term of imprisonment of 210 months, a sentence at the bottom of the Guideline range (of 210 to 262 months). The district court also stated on the record that, in the event the

3

Sentencing Guidelines were held to be unconstitutional, it "would impose the same sentence." Id. at 79.

## II.

On appeal, Thomas, citing the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005), contends the district court violated his Sixth Amendment rights by enhancing his sentence pursuant to U.S.S.G. § 3B1.1(a) on the basis of judicially-found facts.[1] After reviewing the record on appeal, we agree with Thomas that the district court committed constitutional Booker error by making findings of fact regarding the extensiveness of Thomas's criminal activity that increased Thomas's sentence beyond the maximum sentence that would have been imposed on the basis of the facts admitted by Thomas as part of his guilty plea. See United States v. Gonzales-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (discussing constitutional Booker error).

Because Thomas timely asserted an objection in the district court based upon the holding in Blakely v. Washington, 542 U.S. 296 (2004), he adequately preserved his Booker argument for purposes of appeal. See United States v. Lang, 405 F.3d 1060, 1065 (10th Cir. 2005). Thus, we apply the harmless error standard outlined in Federal Rule of Criminal Procedure 52(a). Under that standard, the government, the beneficiary of the constitutional error, must prove that the error was harmless beyond a reasonable doubt. Id. In analyzing whether a preserved constitutional Booker error is harmless, two

---

[1] To the extent Thomas is asserting the district court committed structural error, we reject that assertion. See United States v. Gonzales-Huerta, 403 F.3d 727, 734 (10th Cir. 2005) (rejecting identical argument).

important factors are the strength of the evidence supporting the district court's factual findings and whether the district court would have imposed a less severe sentence had it known it had discretion to do so. See United States v. Riccardi, 405 F.3d 852, 875-76 (10th Cir. 2005).

An analysis of these two factors leads us to conclude that the constitutional Booker error committed by the district court in this case was harmless. First, the facts upon which the district court relied in enhancing Thomas's sentence under § 3B1.1(a) were to a large extent uncontroverted. For example, there does not appear to be any dispute on Thomas's part that he transported females from Oklahoma to other states for the purpose of engaging in prostitution. Indeed, Thomas admitted during his plea hearing that he had transported a minor female from Oklahoma to Pennsylvania with the intent that she would engage in prostitution. ROA, Vol. 2, at 11. Likewise, Thomas does not appear to dispute the number of prostitutes that worked for him over the years. Thus, although Thomas challenges the propriety of the district court relying on its own factual findings to enhance his sentence, he otherwise does not seriously dispute the district court's findings regarding the nature of his offense.

Second, our review of the record leads us to conclude that the district court would have imposed the same sentence under a discretionary sentencing regime. In reaching this conclusion, we note that the district court stated during sentencing that it would impose the same sentence of 210 months' imprisonment even if the Sentencing Guidelines were ultimately found to be unconstitutional. Admittedly, the district court

5

did not expressly outline how it arrived at this proposed alternative sentence. However, our review of the sentencing transcript leads us to conclude that the district court effectively considered the factors outlined in 18 U.S.C. § 3553(a), and thus sufficiently tracked the discretionary sentencing methodology outlined in Booker. In particular, the sentencing transcript indicates that both Thomas and his counsel asked the district court to exercise leniency and mercy and that the district court, in responding to these requests and arriving at both the Guideline and the alternative sentence, considered (1) the nature and circumstances of the offense (including the fact that Thomas was not generally known for treating his prostitutes harshly), (2) the history and characteristics of Thomas (including the fact that Thomas held gainful employment prior to becoming a pimp), (3) the need for the sentence imposed to reflect the seriousness of the offense and to protect the public from further crimes committed by Thomas, and (4) the sentencing range established in the Guidelines by the Sentencing Commission for similar offenses committed by similarly-situated defendants. Thus, we are persuaded the district court effectively "applied the sentencing methodology suggested in Booker," and that "[a] remand would needlessly burden the district court and counsel with another sentencing proceeding, which we know would produce the same result." United States v. Serrano-Dominguez, 406 F.3d 1221, 1224 (10th Cir. 2005) (reaching same result in case involving

non-constitutional <u>Booker</u> error).

AFFIRMED.

<div style="margin-left:50%">

Entered for the Court


Mary Beck Briscoe
Circuit Judge

</div>